Ben F. Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1871 The Alameda, Suite 425
San Jose, CA 95126
Telephone: (408) 429-6506
Fax: (408) 369-0752
pgore@prattattorneys.com

*Attorney for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MARY SWEARINGEN and ROBERT FIGY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>vs.<br><br>SANTA CRUZ NATURAL, INC.<br><br>Defendant. | Case No. CV 13 4291<br><br>**CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT FOR EQUITABLE AND INJUNCTIVE RELIEF**<br><br>**JURY TRIAL DEMANDED**<br><br>Action Filed: September 16, 2013 |

Plaintiffs MARY SWEARINGEN and ROBERT FIGY, ("Plaintiffs") bring this lawsuit against Defendant Santa Cruz Natural, Inc. ("SANTA CRUZ" or "Defendant") based upon their personal knowledge as to their acts and upon information and belief as to all other matters.

### INTRODUCTION

1. This case seeks to recover for the injuries suffered by the Plaintiffs and the Class as a direct result of the Defendant's unlawful sale of misbranded food products. Defendant's actions violate numerous California statutes as well as the unlawful prong of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL") and the Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.* ("CLRA"). Defendant packaged and labeled its food products in violation of California's Sherman Law which adopts, incorporates, and is, in all relevant aspects, identical to the federal Food Drug & Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA") and the

regulations adopted pursuant to that act. These violations render Defendant's food products "misbranded."

2. Under California law, misbranded food products cannot be legally sold or possessed, have no economic value and are legally worthless. Indeed, the sale or possession of misbranded food products is a criminal act in California.

3. By selling such illegal products to unsuspecting Plaintiffs, the Defendant profited at the Plaintiffs' expense and unlawfully deprived Plaintiffs of the money they paid to purchase illegal food products that were illegal to sell, possess or resell and had no economic value while simultaneously exposing the Plaintiffs to potential legal risk by virtue of their possession of misbranded food products.

4. The "Class Period" is September, 2009 to the present.

5. "Purchased Products" are those products that were purchased by Plaintiffs during the Class Period. Plaintiff MARY SWEARINGEN purchased SANTA CRUZ's Lemonade Soda and Orange Mango Soda. Plaintiff ROBERT FIGY purchased SANTA CRUZ'S Raspberry Lemonade Soda and Ginger Ale Soda. Photographs of the Purchased Products are attached as Exhibits 1 – 4.

6. "Class Products" are the Purchased Products and Defendant's other 16 products listed below in paragraph 15 that bear the identical unlawful and illegal label statement as that found on the Purchased Products. SANTA CRUZ uses unlawful labels containing the unlawful term "organic evaporated cane juice" ("ECJ") for all the Class products as is more fully described below. ECJ is a term which is specifically banned from use on food labels under California and federal law.

## PARTIES, JURISDICTION AND VENUE

7. Plaintiffs MARY SWEARINGEN and ROBERT FIGY are citizens of the state of California. During the Class Period, Plaintiffs purchased, in San Francisco, California, SANTA CRUZ products that unlawfully listed the term ECJ on their labels as an ingredient. These products are SANTA CRUZ's Lemonade Soda, Orange Mango Soda, Raspberry Lemonade Soda, and Ginger Ale Soda.

8. Defendant SANTA CRUZ is organized and existing under the laws of the state of California. SANTA CRUZ's headquarters is located at 37 Speedway Avenue, Chico, California,

95928-9554. SANTA CRUZ manufactures, advertises, markets and sells illegal products labeled as containing ECJ to tens of thousands of consumers nationwide, including many residing in California.

9. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a Class Action in which: (1) there are over 100 members in the proposed Class; (2) members of the proposed Class have a different citizenship from Defendant; and (3) the claims of the proposed Class members exceed $5,000,000 in the aggregate.

10. The Court has personal jurisdiction over Defendant because a substantial portion of the wrongdoing alleged in this Complaint occurred in California, Defendant is authorized to do business in California, Defendant has sufficient minimum contacts with California, and Defendant otherwise intentionally availed itself of the markets in California through the promotion, marketing and sale of products, sufficient to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

11. Because a substantial part of the events or omissions giving rise to these claims occurred in this District and because the Court has personal jurisdiction over Defendant, venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (b).

## FACTUAL ALLEGATIONS

12. SANTA CRUZ food products, with their distinctive packaging and array of flavors, are available at most major supermarket chains and other retail outlets from coast to coast. SANTA CRUZ also maintains its own company store that sells the misbranded products at issue in this case. All of SANTA CRUZ's food products have unlawfully utilized the illegal term ECJ in the ingredient list on their labels.

13. SANTA CRUZ unlawfully uses the illegal term ECJ on its package labels, instead of the proper term sugar. Plaintiffs allege that the ingredient called "Organic Evaporated Cane Juice" by Defendant was in fact sugar. It is possible, however, that instead of adding crystalized sugar as the ingredient at issue that the Defendant added dried sugar cane syrup as the ingredient as the ingredient at issue. The common and usual name of such a syrup is "cane syrup" as detailed in 21 CFR § 168.130. Regardless of whether the ingredient in question was sugar or cane syrup, calling the ingredient ECJ was unlawful and violated the same state and federal statutory and regulatory

provisions and was contrary to FDA policy and guidance. Moreover, the use of the term ECJ renders the products misbranded and illegal to sell or possess regardless of whether the ECJ was actually sugar or cane syrup. While Plaintiffs allege that the ingredient in question was in fact sugar, the Plaintiffs' allegations that the ingredient listed as ECJ was sugar should be read to mean the ingredient listed as ECJ was sugar or, in the alternative, dried cane syrup.

14. SANTA CRUZ uses the term ECJ to make its products appear healthier than a product that contains "sugar" as an ingredient. This illegal label is used to increase sales and to charge a premium by making a product seem healthier than it is in reality.

15. SANTA CRUZ sells a number of products with identical ECJ labels, including:

| SANTA CRUZ Products |
| --- |
| Lemonade Soda - Ex. 1 |
| Orange Mango Soda – Ex. 2 |
| Raspberry Lemonade Soda – Ex. 3 |
| Ginger Ale Soda – Ex. 4 |
| Lemon Organic Juice Box – Ex. 5 |
| Grape Organic Juice Box – Ex. 6 |
| Limeade – Ex. 7 |
| Lemon Lime Soda – Ex. 8 |
| Mango Lemonade Soda – Ex. 9 |
| Pomegranate Limeade Soda - Ex. 10 |
| Root Beer Soda – Ex. 11 |
| Sparkling Lemonade – Ex. 12 |
| Sparkling Limeade – Ex. 13 |
| Sparkling Tangerine – Ex. 14 |
| Cherry Lemonade – Ex. 15 |

| |
|---|
| Peach Lemonade Ex. 16 |
| Mango Lemonade – Ex. 17 |
| Raspberry Lemonade – Ex. 18 |
| Strawberry Lemonade – Ex. 19 |
| Original Lemonade – Ex. 20 |

16. Exemplar labels are provided below in Exhibits 1-20. These exhibits are true, correct and accurate photographs of SANTA CRUZ's identical ECJ package labels. At all times during the Class Period, the above listed SANTA CRUZ products listed "Organic Evaporated Cane Juice" as an ingredient.

17. SANTA CRUZ's product labeling fails to accurately identify sugar as an ingredient of its products. Rather, the labeling identifies "Organic Evaporated Cane Juice" as an ingredient, despite the fact that the FDCA requires that the ingredient be called "sugar" or "cane syrup." The ingredient is not "juice," but is "sugar" or "syrup." 21 C.F.R. § 101.4 (a)(1) provides "[i]ngredients required to be declared on the label or labeling of a food…shall be listed by common or usual name…" 21 C.F.R. § 102.5 requires that the common or usual name must accurately describe "the basic nature of the food or its characterizing properties or ingredients", and may not be "confusingly similar to the name of any other food that is not reasonably encompassed within the same name." These federal regulations have been adopted by California pursuant to the Sherman Law. The FDA has expressly held that ECJ is not the common or usual name of any food ingredient. The FDA's determination on this issue is dispositive. The FDA has further held that the term ECJ fails to reveal the basic nature of the food and its characterizing properties, *i.e.* the ingredient is sugar or syrup and not juice. The FDA's determination on this issue is dispositive.

18. Consistent with the common and usual name regulations, the FDA has issued warning letters that specifically told companies not to use the term ECJ. According to the FDA's published policy, ECJ is simply an unlawful way of describing sugar.

19. In October of 2009, the FDA issued *Guidance for Industry: Ingredients Declared as Evaporated Cane Juice, Draft Guidance*, ("2009 ECJ Guidance") which advised industry that:

> [T]he term "evaporated can juice" has started to appear as an ingredient on food labels, most commonly to declare the presence of sweeteners derived from sugar cane syrup. However, FDA's current policy is that sweeteners derived from sugar cane syrup should not be declared as "evaporated cane juice"
>
> As provided in 21 CFR 101.4(a)(1), "Ingredients required to be declared on the label or labeling of a food... shall be listed by common or usual name..." The common or usual name for an ingredient is the name established by common usage or by regulation (21 CFR 102.5(d)). The common or usual name must accurately describe the basic nature of the food or its characterizing properties or ingredients, and may not be "confusingly similar to the name of any other food that is not reasonably encompassed within the same name" (21 CFR 102.5(a))...
>
> Sugar cane products with common or usual names defined by regulation are sugar (21 CFR 101.4(b)(20)) and cane sirup (alternatively spelled "syrup") (21 CFR 168.130)....
>
> The intent of this draft guidance is to advise the regulated industry of FDA's view that the term "evaporated cane juice" is not the common or usual name of any type of sweetener, including dried can syrup...
>
> Sweeteners derived from sugar cane syrup should not be listed in the ingredient declaration by names which suggest that the ingredients are juice, such as "evaporated cane juice." ....such representations ... fail to reveal the basic nature of the food and its characterizing properties (i.e., that the ingredients are sugars or syrups) as required by 21 CFR 102.5. Furthermore, sweeteners derived from sugar cane syrup are not juice and should not be included in the percentage juice declaration on the labels of beverages that are represented to contain fruit or vegetable juice (see 21 CFR 101.30). (emphasis added).

http://www.fda.gov/Food/GuidanceComplianceRegulatoryInformation/GuidanceDocuments/FoodLabelingNutrition/ucm181491.html.

20.     The FDA's position is clear: ECJ is an unlawful term because it is not the common or usual name for sugar. The ingredient listed as "Organic Evaporated Cane Juice" on Defendant's labels is really "sucrose" as defined in 21 C.F.R. § 184.1854 which is required to be listed as sugar. While FDA regulations generally provide that "[t]he name of an ingredient shall be a specific name and not a collective (generic) name," the regulations expressly provide that "[f]or purposes of ingredient labeling, the term *sugar* shall refer to sucrose, which is obtained from sugar cane or sugar beets in accordance with the provisions of 184.1854 of this chapter." 21 C.F.R. § 101.4(b)(20)(emphasis in original).

21.     21 C.F.R. § 184.1854 lists the chemical names, CAS number and structure of sugar/sucrose ($C_{12}H_{22}O_{11}$, CAS Reg. No. 57-50-11-1, β-D-fructofuranosyl-α-D-glucopyranoside)

as well as its common names (sugar, sucrose, cane sugar, or beet sugar). 21 C.F.R. § 184.1854 also confirms that the definition of sugar/sucrose covers products "obtained by crystallization from sugar cane or sugar beet juice that has been extracted by pressing or diffusion, then clarified and evaporated." As such, Defendant cannot call its ingredient ECJ but must call it "sugar."

22. Defendant could easily have complied with the labeling regulations by simply following the FDA's clear example and listing "sugar" on the ingredient list instead of resorting to the illegal term ECJ.

23. When the food industry first approached the FDA in 1999 with the idea of calling sugar ECJ, the FDA responded with a guidance letter ("2000 Guidance Letter"), saying that certain sweeteners have "well recognized common or usual name[s]" and the common or usual name of "[t]he product extracted from sugar cane is either 'sugar' [21CFR § 101.4(b)(20) and 184.1854], or 'cane sirup' [21 CFR § 168.130]." The 2000 Guidance Letter went on to point out to the industry that sweeteners such as the sugar at issue here:

> should not be declared in the ingredient declaration by names which suggest that the ingredients are juice, e.g "evaporated _ juice" or "_nectar", or in such a way as to suggest that the ingredients contain no sugar, e.g."natural extract of _". Such representations …. fail to reveal the basic nature of the food and its characterizing properties, i.e. theingredients are sugar or syrups. They are not juice……. As you know, many of FDA's criminal prosecutions of manufacturers and seizures of fruit juices for economic adulteration have involved precisely these sweeteners being misrepresented in such a way as tomislead consumers. ……We trust that the foregoing will be helpful in providing guidance on the appropriate labeling of these ingredients.

www.regulations.gov/#!documentDetail:D=FDA-2009-D-0430-0005

24. Since it issued the 2000 Guidance Letter the FDA has sent out numerous warning letters to food manufacturers saying that ECJ is not the common or usual name of any sweetener, and that its use on food labels is unlawful. The FDA warning letters issued after the 2009 ECJ Guidance have all expressly stated that "evaporated cane juice is not the common or usual name of any type of sweetener. The proper way to declare this ingredient can be found on the FDA website" in the 2009 ECJ Guidance.

www.fda.gov/ICECI/EnforcementActions/WarningLetters/2012/ucm316268.htm
www.fda.gov/ICECI/EnforcementActions/WarningLetters/2012ucm326550.htm

---

CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT FOR EQUITABLE AND INJUNCTIVE RELIEF 7

25. The FDA has never wavered from the position that the use of the term ECJ violates numerous labeling regulations and misbrands products since it was first set out in 2000. Despite the FDA's numerous policy statements, warning letters and guidance, including the issuance of the 2009 ECJ Guidance, which merely reiterates a position the FDA has taken for at least a full decade, SANTA CRUZ failed to remove the unlawful term ECJ from their misbranded food products' ingredient lists.

26. Consumers paid a premium price for products that fail to comply with mandatory labeling requirements to such a degree that they are misbranded and rendered unfit for sale. These products contain ingredients not listed on the label and are thus illegal to sell or possess. In fact, the products were worthless due to their illegality and thus the unjustified premium paid for these products equaled their purchase price.

27. Plaintiffs and the Class paid a premium price for SANTA CRUZ products with the illegal term ECJ listed on their labels. Plaintiffs would not have purchased these products had they known the products were illegal to sell and possess nor would they have expended the purchase price for products that were worthless due to their illegality.

28. Plaintiffs and the Class have been damaged by SANTA CRUZ's illegal conduct in that they purchased misbranded and worthless products that were illegal to sell or possess.

## DEFENDANT'S CONDUCT IS UNLAWFUL

29. Plaintiffs' case is brought pursuant to the unlawful prong of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 and the Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.* Plaintiffs allege that Defendant packaged and labeled the Purchased Products and Class Products in violation of California's Sherman Law which adopts, incorporates, and is, in all relevant aspects, identical to the federal Food Drug & Cosmetics Act, 21 U.S.C. § 301 *et. seq.* ("FDCA"). Purchased Products and Class Products with this identical type of ECJ labeling violations are "misbranded."

30. 21 C.F.R. §§ 101.3 and 102.5, which have been adopted by California, prohibit manufacturers from referring to foods by anything other than their common and usual names. Pursuant to 21 C.F.R. §102.5 the common or usual name must accurately describe the basic nature of

the food or its characterizing properties or ingredients, and may not be "confusingly similar to the name of any other food that is not reasonably encompassed within the same name" (21 CFR 102.5(a)). Defendant's use of the term ECJ fails this requirement because that term does not accurately describe the basic nature of the food or its characterizing properties or ingredients, and is "confusingly similar to the name of any other food that is not reasonably encompassed within the same name." Here, the true nature of the ingredient is a type of sugar added to sweeten food. The characterizing properties of this ingredient were represented as a juice when in fact they were a sugar or syrup. Defendant hid this fact by unlawfully using a confusing name (a type of juice) that is not reasonably encompassed within the same name.

31. 21 C.F.R. § 101.4, which has been adopted by California, prohibits manufacturers from referring to ingredients by anything other than their common and usual names. It specifically specifies in subsection (b)(20) that "[f]or purposes of ingredient labeling, the term sugar shall refer to sucrose, which is obtained from sugar cane or sugar beets in accordance with the provisions of 184.1854 of this chapter." 21 C.F.R. § 101.4(b)(20). 21 C.F.R. § 184.1854 lists the chemical names, CAS number and structure of sugar/sucrose ($C_{12}H_{22}O_{11}$, CAS Reg. No. 57-50-11-1, β-D-fructofuranosyl-α-D-glucopyranoside) as well as its common names (sugar, sucrose, cane sugar, or beet sugar). 21 C.F.R. § 184.1854 also confirms that the definition of sugar/sucrose covers products "obtained by crystallization from sugar cane or sugar beet juice that has been extracted by pressing or diffusion, then clarified and evaporated."

32. The Federal Register makes clear that the definition of sugar/sucrose in 21 C.F.R. § 184.1854 was specifically modified by the FDA to cover sugar/sucrose that was obtained by the evaporation of sugar cane juice stating:

> In addition, the agency notes that the description of sucrose in proposed § 184.1854(a) does not explicitly cover the extraction, by pressing, of sugar cane juice from sugar cane or beet juice from sugar beets and also does not mention the evaporation of the extracted sugar cane juice or beet juice. Therefore, the agency has modified § 184.1854(a) to include "pressing" as a possible extraction procedure and "evaporated" as a step in the refinement of sucrose.

53 F.R. 44862.

33. SANTA CRUZ has violated the regulatory provisions detailed above by failing to use the common or usual name for sugar as mandated by law. In particular, SANTA CRUZ used the

unlawful term ECJ on its products in violation of numerous federal and state labeling regulations designed to protect consumers from illegal misbranded products in direct violation of express FDA policy as quoted above.

34. Defendant SANTA CRUZ violated 21 CFR §§ 101.4 and 102.5 (adopted and incorporated by reference by Sherman Law § 110100) and Sherman Law § 110725. Sherman Law § 110725 mandates that a product is misbranded if the common and usual ingredient names are not used. Therefore, SANTA CRUZ violated the UCL's unlawful prong by misbranding its products with ECJ instead of using the term "sugar."

35. SANTA CRUZ's act of selling an illegally misbranded product violates Sherman Law § 110760 which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded. The sale of a misbranded product results in an independent violation of the unlawful prong of the UCL that is separate from any labeling violation.

36. Pursuant to Sherman Law § 111825, the sale of such a misbranded product (*i.e.* one whose label fails to use the common and usual ingredient name as required by law) constitutes a criminal act punishable by fine and up to twelve months in jail. As a result, the injury to the Class arises from the Defendant illegally selling a product it misbranded, the sale of which is a criminal act. Plaintiffs and the Class have been unlawfully deprived of money in an illegal transaction that occurred because the Defendant sold them a worthless, illegal product that could not be legally sold or possessed. Due to the law's prohibition of possession of such a product, consumers have been unwittingly placed, solely and directly by SANTA CRUZ's conduct, in a legal position that no reasonable consumer would choose. Consumers have thus been directly injured by the Defendant's illegal act of unlawfully selling them an illegal product. This harm goes beyond mere economic injury.

37. FDA warning letters have made it clear that the use of the term ECJ is unlawful because the term does not represent the common or usual name of a food or ingredient. These warning letters state that foods that bear labels that contain the term ECJ are misbranded. Such unlawful conduct by Defendant SANTA CRUZ is actionable under California law irrespective of any reliance by consumers such as Plaintiffs.

38. Under California law, a food product that is misbranded cannot be legally manufactured, advertised, distributed, possessed or sold. Because these products are illegal to possess, they have no economic value and are legally worthless. Indeed, the sale or possession of misbranded food is a criminal act in California. When Plaintiffs and the Class purchased an illegally misbranded product there is causation and injury even absent reliance on the ECJ misrepresentation that misbranded the product.

### THE UCL's UNLAWFUL PRONG DOES NOT REQUIRE CONSUMER RELIANCE ON AN ILLEGAL LABEL

39. The unlawful sale of misbranded food products that are illegal to sell or possess—standing alone without any allegations of deception by Defendant other than the implicit misrepresentation that its products are legal to sell or possess, or any review of or reliance on the particular labeling claims by Plaintiffs – gives rise to Plaintiffs' cause of action under the UCL and the CLRA. In short, Defendant's injury causing unlawful conduct is the only necessary element needed for UCL liability. All Plaintiffs need to show is that they bought an unlawful product that they would not have otherwise purchased absent the Defendant's failure to disclose the material fact that the product was unlawful to sell or possess. Therefore, this claim does not sound in fraud; instead, it alleges strict liability pursuant to the above cited provisions of the federal law and Sherman Law.

40. Under California law, which is identical to federal law, the sale of Defendant's products listed above are unlawful, because they are misbranded in violation of the Sherman Law.

41. SANTA CRUZ's unlawful, identical ingredient lists render these products misbranded under California law.

42. In addition to the violations of law listed above, the Defendant has violated a number of additional California laws.

43. Defendant's Purchased Products and Class Products are misbranded under California Health & Safety Code § 110705 because words, statements and other information required by the Sherman Law to appear on their labeling either are missing or not sufficiently conspicuous.

44. Defendant's Purchased Products and Class Products are misbranded under California's Health & Safety Code § 110725 because they fail to use the common or usual name for ingredients.

45. Defendant violated California Health & Safety Code § 110760 which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded.

46. Defendant violated California Health & Safety Code § 110765 which makes it unlawful for any person to misbrand any food.

47. Defendant violated California Health & Safety Code § 110770 which makes it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for deliver any such food.

48. Defendant violated 21 CFR §§ 101.4 and 102.5 (adopted and incorporated by reference by Sherman Law § 110100) and Sherman Law § 110725 (mandating common and usual ingredient names) and thus violated the unlawful prong.

49. Products such as Defendant's that use the term ECJ are misbranded under Sherman Law § 110725 (failure to use common and usual ingredient names misbrand product).

50. Defendant's act of selling a misbranded product violates Sherman Law § 110760 (unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded). The sale of a misbranded product results in an independent violation of the unlawful prong that is separate from the labeling violations listed above. When Plaintiffs purchased Defendant's misbranded products there was causation and injury even absent reliance on the misrepresentation/omission that misbranded the product. This injury arises from the unlawful sale of an illegal product that is crime to sell and crime to possess. Plaintiffs were deprived of money in an illegal sale and given a worthless illegal product in return. In addition, due to the law's prohibition of possession of such a product, consumers have been unwittingly placed by the Defendant's conduct in a legal position that no reasonable consumer would agree to be placed.

51. Thus, in this case, where Defendant unlawfully sold products containing the unlawful term ECJ there is 1) a violation of specific labeling regulations and 2) an independent violation of

the unlawful prong due to the Defendant's sale of an illegal product that is unlawful to possess.

52. The Plaintiffs would not have bought the misbranded food products if Defendant had disclosed the material fact that the misbranded food products were illegal to sell and possess. The Defendant had a duty to disclose the illegality of its misbranded products because 1) it had exclusive knowledge of material facts not known or reasonably accessible to Plaintiffs; and (2) Defendant actively concealed a material fact from Plaintiffs. Plaintiffs were injured by Defendant's unlawful act of selling them an illegal product that was illegal to sell or possess.

## CLASS ALLEGATIONS

53. Plaintiffs bring this action as a class action pursuant to Federal Rule of Procedure 23(b)(2) and 23(b)(3) on behalf of the following "Class:" All persons in the United States who, within the Class Period, purchased one or more of the following SANTA CRUZ products:

- Lemonade Soda
- Orange Mango Soda
- Raspberry Lemonade Soda
- Ginger Ale Soda
- Lemon Organic Juice Box
- Grape Organic Juice Box
- Limeade
- Lemon Lime Soda
- Mango Lemonade Soda
- Pomegranate Limeade Soda
- Root Beer Soda
- Sparkling Lemonade
- Sparkling Limeade
- Sparkling Tangerine
- Cherry Lemonade
- Peach Lemonade
- Mango Lemonade

- Raspberry Lemonade
- Strawberry Lemonade
- Original Lemonade

54. The following persons are expressly excluded from the Class: (1) Defendant and its subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the Court to which this case is assigned and its staff.

55. This action can be maintained as a Class Action because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

56. <u>Numerosity</u>: Based upon Defendant's publicly available sales data with respect to the misbranded products at issue, it is estimated that the Class numbers in the thousands, and that joinder of all Class members is impracticable.

57. <u>Common Questions Predominate</u>: This action involves common questions of law and fact applicable to each Class member that predominate over questions that affect only individual Class members. Thus, proof of a common set of facts will establish the right of each Class member to recover. Questions of law and fact common to each Class member include, for example:

    a. Whether Defendant engaged in unlawful business practices by failing to properly label its Purchased and Class Products sold to consumers;

    b. Whether Defendant unlawfully sold illegal misbranded food products that were illegal to sell or possess;

    c. Whether the Purchased and Class Products were misbranded as a matter of law;

    d. Whether Defendant labeled and distributed food with identical unlawful ECJ labels;

    e. Whether Defendant violated California Bus. & Prof. Code § 17200 *et seq.*, the CLRA and the Sherman Law;

    f. Whether Plaintiffs and the Class are entitled to equitable and injunctive relief; and

    g. Whether Defendant's unlawful practices harmed Plaintiffs and the Class such that they would be entitled to restitution.

58. <u>Typicality</u>: Plaintiffs' claims are typical of the claims of the Class because Plaintiffs bought Defendant's Purchased Products during the Class Period. Defendant's unlawful actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiffs and the Class sustained similar injuries arising out of Defendant's conduct in violation of California law. The injuries of each member of the Class were caused directly by Defendant's wrongful conduct. In addition, the factual underpinning of Defendant's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

59. <u>Adequacy</u>: Plaintiffs will fairly and adequately protect the interests of the Class. Neither Plaintiffs nor Plaintiffs' counsel have any interests that conflict with or are antagonistic to the interests of the Class members. Plaintiffs have retained highly competent and experienced Class action attorneys to represent their interests and those of the members of the Class. Plaintiffs and Plaintiffs' counsel have the necessary financial resources to adequately and vigorously litigate this Class action, and Plaintiffs and their counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

60. <u>Superiority</u>: There is no plain, speedy or adequate remedy other than by maintenance of this Class action. The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Further, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a Class action. Class treatment of common questions of law and fact would