1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6
7    MARY SWEARINGEN, et al.,                        Case No.  13-cv-04291-SI

8              Plaintiffs,

9         v.                                         **ORDER GRANTING IN PART AND
                                                     DENYING IN PART DEFENDANT'S
10   SANTA CRUZ NATURAL, INC.,                       MOTION TO DISMISS PLAINTIFFS'
                                                     FIRST AMENDED COMPLAINT**
              Defendant.
11                                                   Re: Dkt. No. 24

12
13         Now before the Court is a motion by defendant Santa Cruz Natural, Inc. ("Santa Cruz") to

14   dismiss plaintiffs' first amended class action complaint.  Dkt. No. 24 ("Mot.").  The motion is

15   scheduled for a hearing on August 19, 2016.  Pursuant to Civil Local Rule 7-1(b), the Court finds

16   this matter appropriate for resolution without oral argument, and hereby VACATES the hearing.

17   For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART defendant's

18   motion pursuant to Rule 12(b)(6) and Rule 9(b).

19

20                                      **BACKGROUND**

21         This is a consumer class action.  Defendant Santa Cruz is a beverage manufacturer which

22   uses the term "organic evaporated cane juice" ("ECJ") on the label of various products, including

23   its Lemonade Soda, Orange Mango Soda, Raspberry Lemonade Soda, and Ginger Ale Soda.  Dkt.

24   No. 23, First Amended Complaint ("FAC") ¶¶ 3, 5, Table 1.

25         Plaintiffs allege that they have purchased Lemonade Soda, Orange Mango Soda, Raspberry

26   Lemonade Soda, and Ginger Ale Soda made by the defendant.  *Id.* ¶ 5.  Plaintiffs describe

27   themselves as "health conscious consumers who wish to avoid 'added sugars' in the food products

28   they purchase."  *Id.* ¶ 71.  They allege that "at the time they read the labels of Defendant's food

products, they attempted to determine whether Defendant's food products contained 'added sugar' by reading the ingredient list. . . . [W]hen they read the ingredient list . . ., 'sugar' was not listed, thus they were led to believe that Defendant's food products that they purchased did not contain added sugar as an ingredient." *Id.* ¶ 132. Plaintiffs allege they "did not know that the ingredient 'evaporated cane juice' was, in reality, sugar at the time they made their purchases. Had they known 'evaporated cane juice' was the same thing as added sugar or syrup, Plaintiffs would not have purchased Defendant's food products." *Id.*

Plaintiffs allege that using the term ECJ violates Food and Drug Administration ("FDA") regulations which require food labels to reflect the common or usual name of an ingredient. *Id.* ¶¶ 23, 44-49 (citing 21 C.F.R. §§ 101.4, 102.5). Plaintiffs allege that the common or usual name for ECJ is actually "sugar," and that defendant uses the term "ECJ" instead to make its products appear healthier to consumers. *Id.* ¶¶ 16, 21, 23, 40, 44. Plaintiffs further allege that defendant's failure to comply with these FDA regulations violates California's Sherman Food, Drug, and Cosmetic Law ("Sherman Law"), California Health and Safety Code § 109875 et seq. *Id.* ¶¶ 8-10, 37-38, 61-65.

Based upon those alleged violations, plaintiffs filed a class action complaint against Santa Cruz on September 16, 2013. Dkt. No. 1, Compl. On December 30, 2013, plaintiffs filed the FAC, asserting causes of action under the following California consumer protection statutes: (1) the Unfair Competition Law ("UCL") for unlawful business practices; (2) the UCL for unfair business practices; (3) the UCL for fraudulent business practices; (4) the False Advertising Law ("FAL") for misleading and deceptive advertising (5) the FAL for untrue advertising; and (6) the Consumer Legal Remedies Act ("CLRA") for unlawful sale of misbranded products and misrepresentations regarding those products. FAC. Plaintiffs also allege causes of action for: (7) breach of express warranty; (8) breach of implied warranty; (9) negligent misrepresentation; (10) negligence; (11) unjust enrichment; (12) recovery in assumpsit; and (13) declaratory relief. *Id.*

On January 29, 2014, defendant moved to dismiss the first amended complaint. Dkt. No. 24. On April 2, 2014, this Court granted the motion and dismissed the action without prejudice pursuant to the doctrine of primary jurisdiction. Dkt. No. 37. On July 1, 2014, pursuant to

United States District Court
Northern District of California

1    plaintiffs' motion to alter or amend the judgment and/or for relief from judgment, the Court set

2    aside the previous judgment, reopened the action, and stayed the action pursuant to the doctrine of

3    primary jurisdiction pending reopened review by the FDA concerning its draft guidance on the use

4    of the term "evaporated cane juice" on food product labels.  Dkt. No. 47.

5         In May 2016, the FDA issued its final guidance.  U.S. Food & Drug Admin., Ingredients

6    Declared as Evaporated Cane Juice: Guidance for Industry (2016) ("Final Guidance").  In light of

7    this development, the Court lifted the stay on this action.  Dkt. No. 62.  Following a case

8    management conference, the Court agreed to reinstate defendant's motion to dismiss the first

9    amended complaint [Dkt. No. 24] and consider those grounds not addressed in the Court's prior

10   orders.  *Id*.  The parties filed supplemental briefing on August 8, 2016.  Dkt. Nos. 65, 66.  The

11   Court now DENIES IN PART and GRANTS IN PART defendant's motion.

**LEGAL STANDARD**

14        Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint

15   if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to

16   dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its

17   face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This "facial plausibility" standard

18   requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant

19   has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While courts do not require

20   "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to

21   relief above the speculative level."  *Twombly*, 550 U.S. at 544, 555.  While a court deciding a

22   motion to dismiss must take a complaint's well-pleaded factual allegations as true, it also must

23   determine, relying on its "judicial experience and common sense," whether those allegations

24   amount to a "plausible" claim.  *Iqbal*, 556 U.S. at 664.

25        Additionally, fraud claims are subject to a higher standard and must be pleaded with

26   particularity. Fed. R. Civ. P. 9(b).  This is true of state law claims, such as those under the UCL,

27   CLRA, and FAL, that are grounded in fraud, and which must "be accompanied by the who, what,

28   when, where, and how of the misconduct charged."  *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d

United States District Court
Northern District of California

3

1097, 1103, 1106 (9th Cir. 2003) (quotation marks omitted).  Such claims "must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citation omitted).  A plaintiff claiming fraud must also plead reliance.  *Kwikset Corp. v. Super. Ct. of Orange Cnty.*, 51 Cal. 4th 310, 326-27 (2011) (UCL); *Princess Cruise Lines, Ltd. v. Super. Ct. of Los Angeles Cnty.*, 179 Cal. App. 4th 46 (2009) (CLRA).  The challenged statements must be judged against the "reasonable consumer" standard under the UCL, CLRA, and FAL.  *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360 (2003).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend.  The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

## DISCUSSION

### I.   Standing

Defendant asserts that plaintiffs lack both statutory standing under the UCL, CLRA, and FAL, as well as Article III standing to assert claims regarding products they did not purchase.

#### A.   Statutory Standing

Defendant Santa Cruz argues that plaintiffs lack standing to bring their UCL, CLRA, and FAL claims because they have failed plausibly to plead reliance.  Mot. at 9-10.  Santa Cruz focuses particularly on what is argues is a failure to plead reliance for claims under the unlawful prong of the UCL.  *Id.* at 9-10.  Santa Cruz also argues that plaintiffs lack statutory standing because they have alleged no economic injury.  *Id.* at 10-11.

The UCL, FAL, and CLRA all require a plaintiff to demonstrate standing.  *See generally Kwikset*, 51 Cal. 4th 310, 323-27 (2011) (discussing standing under the FAL, CLRA, and UCL);

United States District Court
Northern District of California

*Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 641 (2009) (discussing standing under the CLRA).  Standing under the FAL or CLRA requires a plaintiff to allege that he relied on the defendant's purported misrepresentation and suffered economic injury as a result.  *Kwikset*, 51 Cal. 4th at 326 ("Proposition 64 requires that a plaintiff's economic injury come 'as a result of' . . . a violation of the false advertising law . . . .  The phrase 'as a result of' in its plain and ordinary sense means 'caused by' and requires a showing of a causal connection or reliance on the alleged misrepresentation . . . .   This commonsense reading of the language mirrors how we have interpreted the same language in . . . the Consumers Legal Remedies Act." (citations omitted)); *see also* Cal. Bus. & Prof. Code § 17535 (directing that applicable government representative must have "suffered injury in fact and ha[ve] lost money or property as a result of a violation of this chapter" and clarifying that "[a]ny person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of this section . . . "); Cal. Civ. Code § 1780(a) (granting standing to consumers who have suffered damage "as a result of" a violation).  California courts have also extended this reliance requirement to claims under the unlawful prong of the UCL that are based, as here, on allegations of misrepresentation and deception.  *See Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363 (2010).

Here, the plaintiffs allege that, "[p]rior to purchasing these products, Plaintiffs read the labels on these products and saw that the labels included the term 'Organic Evaporated Cane Juice' 'ECJ' as one of the 'INGREDIENTS.'"  FAC ¶ 17.  Plaintiffs further state that they "read and relied upon this misleading and deceptive language . . . when making their decision to purchase the SANTA CRUZ products they purchased.  If not for this misrepresentation, Plaintiffs . . . would not have purchased these products."  *Id.*  At this stage, these allegations suffice to meet the reliance standard under the UCL, CLRA, and FAL.  To plead actual reliance, the "plaintiff must allege that the defendant's misrepresentations were an immediate cause of the injury-causing conduct . . . ."  *In re Tobacco II Cases*, 46 Cal. 4th 298, 328 (2009).  However, "the plaintiff is not required to allege that those misrepresentations were the sole or even the decisive cause of the injury-producing conduct."  *Id.*  For the purposes of this motion, the Court assumes the truth of the allegations in the FAC and finds that the plaintiffs have sufficiently pled actual reliance.  *See*

*Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

Plaintiffs have also sufficiently alleged economic injury.  As defendant notes, "the UCL, CLRA and FAL require a loss of money or property . . . ."  Mot. at 11 (citing *Williamson v. Reinalt-Thomas Corp.*, No. 11-cv-3548-LHK, 2012 WL 1438812, at *8 (N.D. Cal. Apr. 25, 2012); *Kwikset*, 51 Cal. 4th at 323).  In *Kwikset*, the California Supreme Court held that "a consumer who relies on a product label and challenges a misrepresentation contained therein can satisfy the standing requirement of section 17204 by alleging . . . that he or she would not have bought the product but for the misrepresentation."  51 Cal. 4th at 330; *see also Hinojos v. Kohl's Corp.,* 718 F.3d 1098, 1107 (9th Cir. 2013) ("[W]hen a consumer purchases merchandise on the basis of false price information, and when the consumer alleges that he would not have made the purchase but for the misrepresentation, he has standing to sue under the UCL and FAL because he has suffered an economic injury.").

Here, plaintiffs allege that they "did not know that the ingredient 'evaporated cane juice' was, in reality, sugar at the time they made their purchases.  Had they known . . ., Plaintiffs would not have purchased Defendant's food products."  FAC ¶ 132.  This is sufficient to establish economic injury for standing purposes.  *See Hinojos*, 718 F.3d at 1107.  They also allege that they "paid a premium price for Misbranded Food Products that they have been misled into believing do not contain added sugars or syrups[,]" *id.* ¶ 25, which at least one other judge in this district has construed as alleging a claim for overpayment.  *See Morgan v. Wallaby Yogurt Co., Inc.*, No. 13-cv-0296-WHO, 2013 WL 5514563, at *4 (N.D. Cal. Oct. 4, 2013).  Accordingly, plaintiffs have statutory standing to proceed with their claims under the UCL, CLRA, and FAL.[1]

---

[1] Santa Cruz does not outright assert that plaintiffs lack standing based on a lack of injury under Article III, but it cites to several cases that found no standing on constitutional grounds, including a case decided this Court.  *See* Mot. at 11.  To the extent that defendant means to argue by its motion that there is no Article III injury, the Court disagrees.  The prior case that defendant cites, *Boysen v. Walgreen Co.,* No 11-cv-6262, 2012 WL 2953069, at *7 (N.D. Cal. July 19, 2012), was grounded in part on the fact that the plaintiff there did not and could not allege that the products he purchased violated FDA guidelines.  That is not so here.  *See* Final Guidance.

**B.**     **Article III Standing**

Under Article III of the United States Constitution, a plaintiff must show "injury in fact" to have standing in federal court.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).   An "injury in fact" must be "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."  *Friends of the Earth, Inc., v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan*, 504 U.S. at 560-61).  A "quintessential injury-in-fact" occurs when the "plaintiffs spent money that, absent defendants' actions, they would not have spent." *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011).

Here, defendant argues that plaintiffs lack constitutional standing as to products that they did not purchase.  Mot. at 11.  Defendant further argues that plaintiffs attached to their original Complaint exhibits showing that various products they assert used the term "ECJ" do not actually list ECJ as an ingredient.  *Id.* at 12.

Plaintiffs' response on this point is unclear.  Plaintiffs state that they "acknowledge the error in their original complaint" and that "[a]ll of the class products in the FAC, which supersedes the original complaint, list 'organic evaporated cane juice' as an ingredient . . . ."  Opp'n at 13. This is not so.  Plaintiffs list the same products in the FAC that they listed the first time.  *Compare* Compl. ¶ 15 *with* FAC ¶ 5.  A review of the exhibits attached to the original complaint reveals that the following products do not list ECJ or organic ECJ as an ingredient:   Lemon Lime Soda, Mango Lemonade Soda, Pomegranate Limeade Soda, Root Beer Soda, Sparkling Lemonade, Sparkling Limeade, Sparkling Tangerine, Cherry Lemonade, Peach Lemonade, Mango Lemonade, Raspberry Lemonade, Strawberry Lemonade, and Original Lemonade.  *See* Compl. Ex. 8-20.  The Court therefore GRANTS defendant's motion to dismiss as to these products.

This leaves three remaining products in the FAC that list ECJ as an ingredient but that plaintiffs do not claim to have personally purchased: Lemon Organic Juice Box, Grape Organic Juice Box, and Limeade.  *See* FAC ¶ 5.  Courts in this district are split as to whether actual purchase is required to establish the requisite injury-in-fact under Article III, *see Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 868-69 (N.D. Cal. 2012) (recognizing split and analyzing cases).  The Court agrees with those that have determined, where plaintiffs seek to

proceed as representatives of a class, that "the critical inquiry seems to be whether there is sufficient similarity between the products purchased and not purchased." *See Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. 11-cv-2910-EMC, 2012 WL 2990766, at *11 (N.D. Cal. July 20, 2012). Here, the non-purchased products are all various fruit beverages made by defendant that used the term ECJ in the ingredient list. *See* FAC ¶ 5. This is not a case where plaintiffs seek to challenge different types of products, for instance, "baking chips, three drink powders, and wafers" that "look different [and] are labeled differently . . . ." *See Miller*, 912 F. Supp. 2d at 870. As in *Astiana*, plaintiffs here "challeng[e] the same kind of food products . . . as well as the same labels for all of the products . . . ." *See* 2012 WL 2990766, at *13. The Court finds the non-purchased products in this case to be sufficiently similar to the products that the plaintiffs did purchase and DENIES defendant's motion to dismiss the claims regarding these products.

## II.     Preemption

Defendant argues that plaintiffs' claims are both expressly and impliedly preempted by the Food, Drug, and Cosmetic Act ("FDCA"), as amended by the Nutrition Labeling and Education Act ("NLEA"). Mot. at 16, 19. Much of defendant's original argument is now moot given the FDA's issuance of final guidance on the use of the term "evaporated cane juice," but defendant has renewed its argument for express and implied preemption in its supplemental brief. *See* Def.'s Suppl. Br. at 4.

### A.     Express Preemption

Pursuant to the Supremacy Clause of the United States Constitution, "Congress has the power to preempt state law." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). In cases of express preemption, Congress defines "explicitly the extent to which its enactments pre-empt state law." *English v. Gen. Elec. Co.*, 496 U.S. 72, 78 (1990). Where a statute contains an express preemption provision, the court first must focus on the "plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." *See Sprietsma v. Mercury Marine*, 537 U.S. 51, 62-63 (2002) (citation omitted).

8

United States District Court
Northern District of California

1    FDCA § 343-1(a)(2), provides that "no State or political subdivision of a State may

2    directly or indirectly establish under any authority or continue in effect as to any food in interstate

3    commerce . . . any requirement for the labeling of food . . . that is not identical to" federal

4    requirements contained in the relevant sections.  21 U.S.C. § 343-1.  "Not identical to" "means

5    that the State requirement directly or indirectly imposes obligations or contains provisions

6    concerning the composition or labeling of food, or concerning a food container, that: (i) Are not

7    imposed by or contained in the applicable provision . . . or (ii) Differ from those specifically

8    imposed by or contained in the applicable provision . . . ."  21 C.F.R. § 100.1(c)(4).  Therefore,

9    state labeling obligations that are "not identical to" those imposed by federal law are expressly

10   preempted.

11       The Court disagrees that plaintiffs' claims are expressly preempted.  First, while federal

12   law prohibits state food labeling requirements that are not identical to federal requirements, the

13   FDCA and California law contain *identical* prohibitions on false or misleading labeling.  *Compare*

14   Cal. Sherman Food, Drug and Cosmetic Law ("Sherman Law"), Article 6 § 110660, *with* FDCA

15   § 403(a)(1), 21 U.S.C. § 343(a)(1) (both identically provide that food is misbranded if its "labeling

16   is false or misleading in any particular."); *see also* Cal. Health & Safety Code § 110100(a) ("All

17   food labeling regulations and any amendments . . . to the federal act, in effect on January 1, 1993,

18   or adopted after that date shall be the food labeling regulations of this state").  In short, California

19   and federal law are identical and plaintiffs' claims would be preempted only if the consequence of

20   those claims implied or suggested a difference.  *See, e.g.*, Final Rule, 60 Fed. Reg. 57076, 57120

21   (Nov. 13, 1995) ("[T]he only State requirements that are subject to preemption are those that are

22   affirmatively different..."); *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1119 (N.D. Cal.

23   2010) ("plaintiffs' claims need not fail on preemption grounds if the requirements they seek to

24   impose are . . . identical to those imposed by the FDCA . . .").

25       Defendant also argues that plaintiffs' claims are preempted because they advocate for an

26   "affirmative duty to disclose legal labeling violations on a food's packaging" beyond federal

27   requirements.  Mot. at 18 (citing FAC ¶¶ 52, 67).  The FAC does not state what legal authority

28   might impose a duty to disclose, and in their opposition brief plaintiffs clarify that they seek to

9

impose no additional duty on Santa Cruz: "Plaintiffs' claims . . . are based on state law which is identical to federal law.  Plaintiffs do not seek to impose any new label requirement, but rather to enforce California law which, like federal law, prohibits the sale of misbranded products."  Dkt. No. 28 ("Opp'n") at 19.  Given plaintiffs' clarification that they do not seek to impose any additional affirmative duties to disclose that are not present in federal law, the Court DENIES defendant's motion to dismiss on these grounds.

Defendant similarly argues that plaintiffs' "no added sugar" theory is preempted, citing to FDA regulations explaining when the term "no added sugar" may be used.  Mot. at 19 (citing 21 C.F.R. § 101.60(c)(2)).  Defendant does not cite which sections of the FAC it alleges specifically violate federal requirements, and it does not clarify this in its reply or supplemental brief. Plaintiffs assert that they *personally* try to avoid purchasing food products with added sugar.  FAC ¶ 17.  The FAC also explains that plaintiffs did not realize the products they purchased contained added sugar because Santa Cruz used the term "ECJ" instead.  *Id.* ¶ 71.  The Court does not read these allegations as seeking to impose a "no added sugar" labeling requirement on Santa Cruz separate and apart from what exists in federal law.  Indeed, in their opposition, plaintiffs clarify that their FAC does not aim to allege a violation of the FDA's "no sugar added" regulation. Opp'n at 19.  The Court therefore DENIES defendant's preemption claim as to the "no added sugar" theory.

### B.     Implied Preemption

Santa Cruz also argues that plaintiffs' claims are impliedly preempted because the FAC "seeks to enforce FDA regulations under the guise of consumer protection and common law claims." Mot. at 19.

Plaintiffs cite to numerous cases out of this district involving allegations of food mislabeling where the courts found no implied preemption.  *See* Opp'n at 19.  For instance, the defendant in another ECJ case, *Kane v. Chobani, Inc.*, No. 12-cv-2425-LHK, 2013 WL 3702981, at *11 (N.D. Cal. July 12, 2013), raised the same implied preemption argument that Santa Cruz raises here.  The *Chobani* defendant cited to 21 U.S.C. § 337(a), a provision of the FDCA which

states in part that "all such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States." *See also* Mot. at 19 (citing 21 U.S.C. § 337(a)).  There, Judge Koh examined the text of the NLEA, which amended the FDCA, and its legislative history before concluding that allowing a private individual to bring state law claims based on a violation of the FDCA did not conflict with Congress's intent.  *Chobani*, 2013 WL 3702981, at *11-12.  Judge Koh explained that "there is no indication from the text of the NLEA . . . or its legislative history that Congress 'intended a sweeping preemption of private actions predicated on [identical labeling] requirements contained in state laws.'"  *Id.* at *12 (quoting *Brazil v. Dole Food Co., Inc.*, No. 12-cv-1831-LHK, 2013 WL 1209955, at *7 (N.D. Cal. Mar. 2013); *In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1090 (2008)).  Further, Judge Koh noted that the "NLEA states that it 'shall *not* be construed to preempt any provision of State law, unless such provision is expressly preempted under [21 U.S.C. § 343-1] of the Federal Food, Drug, and Cosmetic Act.'"  *Id.* (citing *Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 336 (3d Cir. 2009) (quoting Pub. L. No. 101-535, § 6(c)(1), 104 Stat. 2353, 2364 (Nov. 8, 1990))).

*Chobani* also distinguished several of the cases upon which defendant in this case relies: *Buckman v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001); *Perez v. Nidek Co., Ltd.*, 711 F.3d 1109 (9th Cir. 2013); and *Stengel v. Medtronic Inc.*, 704 F.3d 1224 (9th Cir. 2013).  *See* Mot. at 19-20.  All of those cases involved Class III medical devices, which are required to undergo an extensive pre-market approval process governed by the FDCA, as amended by the Medical Device Amendments of 1976.  In addition to finding the cases factually distinct from the one at hand, Judge Koh noted that the plaintiffs in *Chobani* raised claims for violation of California's FAL, CLRA, and UCL; thus, they sued for conduct that violated California state law, not for conduct that violates the FDCA, as did the plaintiffs in *Buckman*, *Perez*, and *Stengel*.  *Chobani*, 2013 WL 3702981, at *14.

*PhotoMedex*, which Santa Cruz also cites, is similarly distinguishable.  *See* Mot. at 20 (citing *PhotoMedex, Inc. v. Irwin*, 601 F.3d 919 (9th Cir. 2010)).  That case, involving a Class II medical device, found that the FDCA preempted claims brought under the Lanham Act where "the claim would require litigation of the alleged underlying FDCA violation in a circumstance where

11

1    the FDA has not itself concluded that there was such a violation." *PhotoMedex*, 601 F.3d at 924.

2    Here, plaintiffs do not bring Lanham Act claims, and, since defendant first briefed this issue in

3    January 2014, the FDA has since issued its final guidance that the term "evaporated cane juice"

4    "should instead be declared on food labels as 'sugar[.]'" *See* Final Guidance at 5.

5          Although Judge Koh later vacated her order and granted the defendant's motion to dismiss

6    on primary jurisdiction grounds, the Court is persuaded by the reasoning in *Chobani* as to implied

7    preemption and adopts it here.   The Court thus agrees with the numerous other judges in this

8    district that have found plaintiffs' state law claims regarding mislabeled food are not impliedly

9    preempted by the FDCA.  *See, e.g., Swearingen v. Yucatan Foods, L.P.*, 24 F. Supp. 3d 889, 897

10   (N.D. Cal. 2014), *motion dismissed on other grounds by* 59 F. Supp. 3d 961; *Ivie v. Kraft Foods

11   Global, Inc.*, 961 F. Supp. 2d 1033, 1043-45 (N.D. Cal. 2013); *Wallaby Yogurt*, 2013 WL

12   5514563, at *5-6; *Trazo v. Nestle USA, Inc.*, No. 12-cv-2272-PSG, 2013 WL 4083218, at *6 (N.D.

13   Cal. Aug. 9, 2013).

14

15   **III.    Reasonable Consumer Test**

16         Santa Cruz also moves to dismiss the First Amended Complaint because it argues that

17   plaintiffs cannot meet the "reasonable consumer" test of the UCL, FAL, and CLRA.  Mot. at 3-4.

18   The UCL "prohibits any 'unlawful, unfair or fraudulent business act or practice." *Williams v.

19   Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).  California's false advertising law prohibits

20   any "unfair, deceptive, untrue, or misleading advertising."  Cal. Bus. & Prof. Code § 17500.  The

21   CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices

22   undertaken by any person in a transaction intended to result or which results in the sale or lease of

23   goods or services to any consumer."  Cal. Civ. Code § 1770(a).  Sellers can be liable under the

24   CLRA for making affirmative misrepresentations as well as for failing to disclose defects in a

25   product.  *See, e.g., Daugherty v. Am. Honda Co., Inc.*, 144 Cal. App. 4th 824 (2006).

26         Claims under the UCL, FAL, and CLRA are governed by the "reasonable consumer" test.

27   *Williams*, 552 F.3d at 938.  Under this test, plaintiffs must "show that 'members of the public are

28   likely to be deceived."  *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (quoting *Bank of*

1   *the West v. Super. Ct.*, 2 Cal. 4th 1254, 1267 (1992)).  This standard "requires a plaintiff to show

2   potential deception of consumers acting reasonably in the circumstances -- not just any

3   consumers." *Hill*, *v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1304 (2011).

4           Here, defendant argues that a reasonable consumer is not likely to be deceived by the

5   statement of ECJ.  The Court disagrees.  Plaintiffs allege that they purchased Lemonade Soda,

6   Orange Mango Soda, Raspberry Lemonade Soda, and Ginger Ale Soda made by the defendant.

7   FAC ¶ 5.  They allege that "at the time they read the labels of Defendant's food products, they

8   attempted to determine whether Defendant's food products contained 'added sugar' by reading the

9   ingredient list. . . . [W]hen they read the ingredient list . . . , 'sugar' was not listed, thus they were

10  led to believe that Defendant's food products that they purchased did not contain added sugar as

11  an ingredient." *Id.* ¶ 132.  Plaintiffs allege that, while they "were aware that the Santa Cruz food

12  products contained some sugars, they believed these sugars were naturally occurring sugars that

13  were found *naturally* in the ingredients used by Santa Cruz." *Id.* ¶ 71.  Plaintiffs allege they "did

14  not know that the ingredient 'evaporated cane juice' was, in reality, sugar at the time they made

15  their purchases." *Id.* ¶ 132.

16          The Court has some reservations as to whether a reasonable consumer would be misled as

17  regarding added sugars in the Lemonade Soda and Ginger Ale Soda.  The ingredients used by

18  Santa Cruz in the Lemonade Soda are listed on the label as: "sparkling filtered water, organic

19  evaporated cane juice, organic lemon juice concentrate, organic lemon juice, organic natural

20  lemon flavor." FAC Ex. 1.  The label also reveals that the product contains 35 grams of sugar.  *Id.*

21  It is unclear that a reasonable consumer would believe that 35 grams of sugar naturally occurs, as

22  plaintiffs allege, in filtered water, lemon juice, or other lemon flavorings.  The same goes for the

23  Ginger Ale Soda, which contains 32 grams of sugar and lists the following ingredients: "sparkling

24  filtered water, organic brewed ginger root (water, organic ginger root), organic evaporated cane

25  juice, organic lemon juice, organic natural flavor." *Id.* Ex. 4.

26          Nevertheless, a reasonable consumer could have been misled as to whether the sugar

27  content in the other two purchased products, Orange Mango Soda and Raspberry Lemonade Soda,

28  were naturally occurring.  These products list their sugar content at 29 and 25 grams respectively.

*Id.* Ex. 2, 3.  The Orange Mango Soda contains, among other ingredients, "organic mango puree" and "organic orange and organic lemon juice concentrates."  *Id.* Ex. 2.  The Raspberry Lemonade Soda contains, among other ingredients, "organic raspberry puree."  The Court finds that a reasonable consumer might think that these ingredients created naturally occurring sugars that comprised the sugar content of the beverage.

"California courts . . . have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer."  *See Williams*, 552 F.3d at 938 (citing *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 114, 134-35 (2007)). As such, the Court will allow plaintiffs' claims to proceed under the reasonable consumer test. Moreover, plaintiff Mary Swearingen alleges that she purchased the Lemonade Soda and the Orange Mango Soda.  FAC ¶ 2.  Plaintiff Bob Figy alleges that he purchased the Raspberry Lemonade Soda and Ginger Ale Soda.  *Id.*  Thus, even if the Court were to dismiss plaintiffs' UCL, FAL, and CLRA claims at this early stage as to the Lemonade Soda and the Ginger Ale Soda, each plaintiff would still have purchased a product (the Orange Mango Soda and the Raspberry Lemonade Soda) that the Court finds may have misled the reasonable consumer.

Because the Court finds that plaintiffs may proceed on their added sugars theory, it need not separately address whether a reasonable consumer would also have been misled as to plaintiffs' "illegal products" theory.  *See* Mot. at 6.  The Court DENIES defendant's motion to dismiss plaintiffs' UCL, FAL, and CLRA claims based on the reasonable consumer test.

## IV.   Claims Sounding in Fraud

Defendant moves to dismiss the following claims for allegedly failing to meet the heightened pleading requirement of Rule 9(b): UCL, FAL, and CLRA claims, including claims under the UCL's unlawful prong; negligent misrepresentation; and negligence.  Mot. at 13 n.4. Defendant argues that plaintiffs have failed to allege "the who, what, when, where, and how of the misconduct charged."  *See Vess*, 317 F.3d at 1103, 1106.  In particular, defendant seeks to know more specifically "when and where [plaintiffs] purchased the four products at issue, and the number of occasions they were exposed to the alleged misrepresentations."  Mot. at 13.

In their FAC, plaintiffs allege that they purchased "Santa Cruz Misbranded Food Products" during the class period, defined as September 16, 2009, through the present.  FAC ¶¶ 1, 26-27. They allege that the products were misbranded because they listed ECJ as an ingredient on their product labels "despite the fact that the FDCA requires that the ingredient be called 'sugar' or 'dried cane syrup.'"  *Id.* ¶ 44, Ex. 1-4.  Plaintiffs are residents of California and they argue that this implies that they purchased the products at issue in California.  *Id.* ¶¶ 26-27; Opp'n at 14.

These allegations suffice to meet the pleading standard of Rule 9(b).  Other courts in this district have found sufficient the "when" of a complaint that alleges that the plaintiff made the purchase during the class period.  *See, e.g., Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 576 (N. D. Cal. 2013); *Bruton v. Gerber Products Co.*, No. 12-cv-2412-LHK, 2014 WL 172111, at *13 (N.D. Cal. Jan. 15, 2014); *Ang v. Bimbo Bakeries USA, Inc.*, No. 13-cv-1196-WHO, 2013 WL 5407039, at *2-3 (N.D. Cal. Sept. 25, 2013).   Courts have also interpreted the "where" requirement in such cases not to mean the physical location where the plaintiff purchased the product but rather where the defendant made the alleged misstatement.  *See Clancy*, 308 F.R.D. at 576 ("The 'where' is on the ice cream package labels."); *Khasin v. Hershey Co.*, No. 12-cv-1862-EJD, 2012 WL 5471153, at *8 (N.D. Cal. Nov. 9, 2012) ("the 'where' is on the package labels of the products in question and on Defendant's website").

Santa Cruz also argues that plaintiffs' claims fail "to unambiguously identify which particular products' labeling violated [regulatory] requirements and present the precise language that constitutes misrepresentation."  Mot. at 13 (citations omitted).   In their FAC, however, plaintiffs clearly list the specific "Misbranded Products" that they are challenging.  FAC ¶ 5. Plaintiffs attached the labels of the four products they claim to have purchased as exhibits to the FAC.  FAC Ex. 1-4.  They attached the labels of all of the challenged products as exhibits to the original complaint.  Compl. Ex. 1-20.  As noted above, the Court is granting defendant's motion to dismiss from this case those products that do not, per the Complaint's exhibits, list ECJ or organic ECJ as an ingredient.  *See* § I.B, *supra*.  The inclusion of these products in the FAC, however, does not mean that plaintiffs have failed to state their claim as to the remaining products with particularity.  The FAC lists the products at issue and states that they are mislabeled because of

their use of the term ECJ on their labels.  *See* FAC ¶ 5.

This is not a case in which the plaintiff "has failed to set forth sufficient facts explaining why the labeling is misleading."  *See Rahman v. Mott's LLP*, No. 13-cv-3482-SI, 2014 WL 325241, at *8 (N.D. Cal. Jan. 29, 2014).  Nor is this a case in which the complaint is "filled with vague assertions that, despite general references to multiple categories of state and federal regulations, leave unclear the precise nature of any alleged violation."  *See Park v. Welch Foods, Inc.*, No. 12-cv-6449-PSG, 2013 WL 5405318, at *5 (N.D. Cal. Sept. 26, 2013) (quoting *Brazil v. Dole Food Co., Inc.*, 935 F. Supp. 2d. 947, 964 (N.D. Cal. 2013)).  Plaintiffs' FAC here makes quite clear that the alleged mislabeling is the use of the term ECJ on the challenged products.  *See, e.g.,* FAC ¶¶ 5, 17, 44, 72.  The important question is whether the FAC gives Santa Cruz "notice of the particular misconduct which is alleged to constitute the fraud charged so that [it] can defend against the charge and not just deny that [it has] done anything wrong."  *See Swartz*, 476 F.3d at 764.  Finding that it does, the Court DENIES defendant's motion to dismiss the claims sounding in fraud.

## V.     Other Claims

Finally, defendant moves to dismiss plaintiffs' remaining claims.  Mot. at 22-25.

### A.     Negligence and Negligent Misrepresentation

Defendant argues that plaintiffs' negligence and negligent misrepresentation claims must be dismissed for failure to meet the pleading standard of Rule 9(b) and because plaintiffs seek to recover purely economic losses.  Mot. at 22.  Plaintiffs argue that their claims are not barred by the economic loss rule because they do not seek relief for breach of contract and because that rule "has no application where a defendant breaches a legal duty independent of contract, irrespective of whether damages are economic."  Opp'n at 21 (citing *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 989 (2004)).  Plaintiffs do not dispute that the damages they seek in the FAC are purely economic.

The economic loss rule generally allows plaintiffs to "seek remedies for negligence only

where they experience 'physical injury to person or property, and not for pure economic losses.'" *Williamson*, 2012 WL 1438812, at *14 (citation omitted).  Although certain exceptions may apply in which a plaintiff may recover for economic loss in negligence, the Court does not find those exceptions to apply here.  In particular, plaintiffs cite to the California Supreme Court's decision in *Robinson* as support for its position.  *See* Opp'n at 21.  *Robinson* involved a plaintiff helicopter manufacturer suing a supplier over a change in the process of manufacturing helicopter clutches. In finding that the economic loss rule did not bar the plaintiff's claims for fraud and intentional misrepresentation, the California Supreme Court stated, "Our holding today is narrow in scope and limited to a defendant's affirmative misrepresentations on which a plaintiff relies and which expose a plaintiff to liability for personal damages independent of the plaintiff's economic loss." *Robinson*, 34 Cal. 4th at 993.

Plaintiffs here have failed to state an independent basis for their damages apart from their economic loss.  They cannot avoid the overall rule that "requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise."  *See id.* at 988.  They have made no allegations to show that "the duty that gives rise to tort liability is either completely independent of the contract or arises from conduct which is both intentional and intended to harm."  *See id.* at 990 (citing exceptions to the economic loss rule as including: breach of duty directly causing physical injury, breach of the covenant of good faith and fair dealing in insurance contracts, wrongful discharge in violation of fundamental public policy, or where the contract was fraudulently induced); *see also Strumlauf v. Starbucks Corp.*, No. 16-cv-1306-TEH, 2016 WL 331842, at *7-8 (N.D. Cal. June 17, 2016) (dismissing with prejudice plaintiffs' negligent misrepresentation claim in suit alleging that Starbucks underfilled its lattes); *Williamson v. Reinalt-Thomas Corp.*, No. 11-cv-3548-LHK, 2012 WL 1438812, at *14-15 (N.D. Cal. Apr. 25, 2012) (dismissing with prejudice plaintiffs' negligence claim in suit alleging hidden tire disposal fees against tire retailer).

Accordingly, the Court GRANTS defendant's motion to dismiss plaintiffs' negligence and negligent misrepresentation claims.  The Court dismisses these claims with leave to amend, in the event that plaintiffs are able to allege damages of "physical injury to person or property, and not

for pure economic losses." *See Williamson*, 2012 WL 1438812, at *14 (quoting *Chang Bee Yang v. Sun Trust Mortg., Inc.*, No. 10-cv-1541-AWI, 2011 WL 902108, at *7 (E.D. Cal. Mar. 15, 2011)).[2]

### B.     Express and Implied Warranty

Defendant argues that plaintiffs' seventh and eighth causes of action — breach of express warranty and breach of implied warranty of merchantability — must be dismissed.  Defendant argues in part that the breach of express warranty claim fails because "Plaintiffs attempt to avoid dismissal by not specifying a particular statutory or common law basis for their express warranty claim . . . ."  Mot. at 22.  In their opposition, plaintiffs cite to the elements for a breach of express and implied warranty under the Uniform Commercial Code.  Opp'n at 22-23.  Defendant also appears to have understood the claim as one under the Uniform Commercial Code, as they cite requirements imposed by the California Commercial Code in their moving papers and in their reply. *See* Mot. at 23; Reply at 14.

Defendant also argues that plaintiffs failed to give notice of the alleged breach as required by California Commercial Code section 2607(3)(A).  Mot. at 23.  This section states that, "[w]here a tender has been accepted . . . [t]he buyer must, within a reasonable time after he or she discovers or should have discovered any breach, notify the seller of breach or be barred from any remedy[.]"  Cal. Com. Code § 2607(3)(A).  Plaintiff argues that the filing of this lawsuit *is* the notice.  Opp'n at 22 ("Defendant received adequate notice of the breach when Plaintiffs[] filed their original complaint . . . . ).

The Ninth Circuit has considered and rejected the argument that the filing of a lawsuit may constitute notice for breach of express and implied warranty claims.  In *Alvarez v. Chevron Corp.*, 656 F.3d 925 (9th Cir. 2011), the Ninth Circuit affirmed the district court's dismissal of express

_____

[2] Because the Court dismisses these claims based on the economic loss rule, it does not address defendant's arguments regarding the heightened pleading standard of Rule 9(b) and reliance. *See* Mot. at 22.  In any event, the Court has addressed those arguments elsewhere in this order.

United States District Court
Northern District of California

warranty and implied warranty claims brought by individuals suing for alleged over-payments for premium grade gasoline. Plaintiffs there had failed to provide defendants with reasonable notice of the breach as required by California Commercial Code section 2607(3)(A). *Alvarez*, 656 F.3d at 931-32. The *Alvarez* court explained that "[t]he purpose of giving notice of breach is to allow the breaching party to cure the breach and thereby avoid the necessity of litigating the matter in court. [Citations] This purpose would be completely undermined if it could be satisfied with the giving of post-suit notice." *Id.* at 932. Where plaintiffs had sent defendants a notice letter at the same time that they sent a copy of the complaint, they had failed to provide reasonable notice. *Id.* The appeals court affirmed the dismissal of these claims with prejudice.

Here, it does not appear that plaintiffs could cure their failure to provide notice by amending their complaint. Their FAC makes no reference to any notice of a breach that they provided to Santa Cruz. Their opposition brief twice argues, without citing to any authority, that the filing of this lawsuit constituted the requisite notice, which cannot be per *Alvarez*. *See* Opp'n at 22-23. And plaintiffs' supplemental brief is silent as to their warranty claims. Finding that plaintiffs have failed to provide reasonable notice of the breach and that amendment could not cure this failure, the Court GRANTS defendant's motion to dismiss plaintiffs' express and implied warranty claims with prejudice.

### C.      Unjust enrichment

Plaintiffs' eleventh cause of action raises claims for unjust enrichment. FAC at 54. In their opposition, plaintiffs offer no counter-argument to defendant's motion to dismiss this cause of action.

This Court has held that unjust enrichment does not exist as a standalone cause of action. *See Robinson v. HSBC Bank USA*, 732 F. Supp. 2d 976, 987 (N.D. Cal. 2010) (dismissing with prejudice plaintiffs' unjust enrichment claim brought in connection with claims of misappropriation and violation of the UCL). More recently, other courts have reached the same conclusion. *See, e.g., Hill*, 195 Cal. App. 4th at 1307 ("Unjust enrichment is not a cause of action, just a restitution claim."); *Fraley v. Facebook*, 830 F. Supp. 2d 785, 814-15 (N.D. Cal. 2011).

1    Thus, plaintiffs' unjust enrichment claim does not properly state an independent cause of action

2    and is DISMISSED with prejudice.

3

4    **D.    Money Had and Received**

5    Defendant moves to dismiss plaintiffs' twelfth cause of action, "common count of money

6    had and received – recovery in assumpsit of funds paid for misbranded products that are illegal to

7    sell." Mot. at 24; FAC at 54-56. Defendant alleges that the basis for the claim for relief is unclear

8    and, in any event, that plaintiffs fail to allege the required elements for a count of money had and

9    received. Mot. at 24-25.

10   "A cause of action is stated for money had and received if the defendant is indebted to the

11   plaintiff in a certain sum 'for money had and received by the defendant for the use of the

12   plaintiff.'" *Schultz v. Harney*, 27 Cal. App. 4th 1611, 1623 (1994) (citations omitted); *see also*

13   Judicial Council of Cal. Civil Jury Instructions, CACI No. 370 (2016 ed.). "The cause of action is

14   available where, as here, the plaintiff has paid money to the defendant pursuant to a contract which

15   is void for illegality." *Schultz*, 27 Cal. App. 4th at 1623 (citation omitted).

16   The Court finds that plaintiffs have sufficiently pled the elements to allege a claim of

17   money had and received. They argue that Santa Cruz "received and has possession of money that

18   it obtained from the illegal sale of misbranded food products to the Plaintiffs and the Class . . . .

19   The money held by Defendant is the property of Plaintiffs and the Class." FAC ¶ 252. Plaintiffs

20   also allege that defendant came by this money through an illegal contract, that is, the sale of food

21   products that "were misbranded and thus illegal to sell or possess." *Id.* ¶ 247. At this stage, they

22   have sufficiently alleged the elements needed for a claim of money had and received. Further,

23   although defendant may be correct that plaintiffs' claim for relief is confusing, in that it cites to

24   alleged violations of numerous and disparate state laws, the claim is entitled "Common Count of

25   Money Had and Received," and that appears to be how defendant has interpreted it. *See* Mot. at

26   25 (citing elements for claim of money had and received); FAC at 54. Nor does plaintiffs' claim

27   fail because it does not specify an exact dollar amount. *See* Mot. at 25. Although the amount of

28   money at issue for this claim must be "ascertainable," defendant fails to cite to any authority

United States District Court
Northern District of California

20

requiring that the exact sum be alleged in the complaint.  *See Berry v. Webloyalty.com, Inc.*, No. 10-cv-1358-H (CAB), 2010 WL 8416525, at *6 (S.D. Cal. Nov. 16, 2010) (citing *French v. Robbins*, 172 Cal. 670, 679 (1916)); Mot. at 25.  The Court agrees with plaintiffs that the amount of funds at issue in this claim is ascertainable through discovery.  *See Berry*, 2010 WL 8416525, at *6; Opp'n at 24.  The Court therefore DENIES defendant's motion to dismiss plaintiffs' twelfth cause of action.

### E.   Declaratory Relief

Finally, Santa Cruz moves to dismiss plaintiffs' fourteenth cause of action, arguing that plaintiffs lack standing to seek declaratory and injunctive relief because they have stated that they will not purchase defendant's products again due to the added sugar content.  Mot. at 25 (citing FAC ¶ 97).  Plaintiffs do not argue that they will purchase Santa Cruz's products again.  Rather, they urge the Court to adopt the reasoning of other courts that have held as policy matters that plaintiffs who will not purchase the products in question again may still seek injunctive relief under California's consumer laws.  Opp'n at 24-25.

In another case, this Court has considered and rejected the argument that plaintiffs put forward here.  *See Rahman*, 2014 WL 325241, at *10.  To have standing to obtain injunctive relief, a plaintiff must allege that a "real or immediate threat" exists that he will be wronged again. *City of Los Angeles v. Lyons,* 461 U.S. 95, 111 (1983); *see also Chapman v. Pier 1 Imps. (U.S.), Inc.,* 631 F.3d 939, 946 (9th Cir. 2011) ("[T]o establish standing to pursue injunctive relief, . . . [plaintiff] must demonstrate a 'real and immediate threat of repeated injury' in the future."). Therefore, this Court has previously found that to establish standing in a case such as this one, the plaintiff must allege that he intends to purchase the products at issue in the future.  *See Rahman*, 2014 WL 325241, at *10 (citing *Jou v. Kimberly-Clark Corp.*, No. 13-cv-3075-JSC, 2013 WL 6491158, at *4 (N.D. Cal. Dec. 10, 2013); *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 533-34 (N.D. Cal. 2012); *Delarosa v. Boiron, Inc.*, No. 10-1568-JST, 2012 WL 8716658, at *2-6 (C.D. Cal. Dec. 28, 2012)); *see also Duran v. Hampton Creek*, No. 15-cv-5497-LB, 2016 WL 1191685, at *7 (N.D. Cal. Mar. 28, 2016).

United States District Court
Northern District of California

1    Plaintiffs' case is predicated on the premise that they would not have purchased the food

2  products in question if they had known that ECJ was sugar.  Given this, the Court has difficulty

3  envisioning how plaintiffs could amend their complaint to allege plausibly that, now knowing the

4  products to contain added sugar, they will purchase the products in the future.  Nevertheless,

5  because the Court cannot say that "that the pleading could not possibly be cured by the allegation

6  of other facts[,]" it will grant leave to amend.  *See Lopez*, 203 F.3d at1130.  Accordingly, the

7  Court GRANTS defendant's motion to dismiss the fourteenth cause of action with leave to amend.

8

9                                          **CONCLUSION**

10    For the foregoing reasons, the Court GRANTS defendant's motion to dismiss plaintiffs'

11  claims as to the non-purchased products that do not list "evaporated cane juice" or "organic

12  evaporated cane juice" as an ingredient, with prejudice.  *See* Compl. Ex. 8-20.  The Court also

13  GRANTS defendant's motion to dismiss claims Nine (negligent misrepresentation), Ten

14  (negligence), and Fourteen (declaratory judgment), all with leave to amend.  The Court GRANTS

15  with prejudice defendant's motion to dismiss claims Seven (breach of express warranty), Eight

16  (breach of implied warranty of merchantability), and Eleven (unjust enrichment).  The balance of

17  defendant's motion is DENIED.

18    Plaintiffs must file any amended complaint **on or before August 26, 2016.**

19

20    **IT IS SO ORDERED**.

21  Dated:  August 17, 2016

22                                          _____

23                                          SUSAN ILLSTON
                                            United States District Judge

24

25

26

27

28